United States District Court
Southern District of Texas

**ENTERED**

July 30, 2020

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Doris Scott, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-18-4759 |
| | § | |
| Andrew Saul, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| *Defendant*. | § | |

# MEMORANDUM AND RECOMMENDATION

Plaintiff Doris Scott appeals the Social Security Administration Commissioner's final decision denying her applications for social security benefits. (D.E. 1.) This case was referred to the magistrate judge for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1). Pending before the court is Plaintiff's Motion for Summary Judgment (D.E. 13) and Defendant's cross-motion for summary judgment. (D.E. 14.) Having considered the motions, filings, and applicable law, the court recommends that the final decision of the Commissioner be affirmed.

## 1. Procedural Posture

Scott applied for both disability insurance and supplemental security income on June 3, 2015. (Tr. 545, 549.) Scott claimed that she became disabled on June 20, 2014, due to heart problems, a blood disorder, and deep vein thrombosis.

(Tr. 545, 549, 571.) Scott later amended her alleged onset disability date to October 2, 2016, to reflect the date of her pulmonary embolism. (Tr. 423, 535.) In her benefits applications, Scott stated that she was born in 1966. (Tr. 545, 549.)

The Social Security Administration denied Scott's disability and benefits applications on July 20, 2015. (Tr. 460.) Scott sought reconsideration on August 19, 2015. (Tr. 472.) That request was denied on September 28, 2015. (Tr. 475.) Scott requested a hearing. (Tr. 479.)

Administrative Law Judge (ALJ) Gary J. Suttles held a hearing on September 20, 2017, in Houston, Texas. (Tr. 384–429.) The ALJ issued a decision on December 28, 2017, finding that Scott was not disabled. (Tr. 369–77.) The Appeals Council denied Scott's request for review on October 17, 2018. (Tr. 1.) Scott filed her complaint in federal court on December 17, 2018, to appeal the ALJ's decision. (D.E. 1.)

## 2. Legal Standards

### A. Five–Step Process

The Social Security Act provides disability insurance benefits to people who have contributed to the program and have a physical or mental disability. *See* 42 U.S.C. § 423. It defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. § 423(d)(1)(A).

2

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. The claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A finding that the claimant is disabled or not disabled at any point in the five-step review ends the analysis. *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).

At step one, the ALJ must determine whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2017). A person who is working and engaging in substantial gainful activity is not disabled, regardless of the medical findings. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

At step two, the ALJ determines whether any of the claimant's impairments are severe. 20 C.F.R. § 404.1520(c) (2017). An impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). A person who does not have a severe impairment is not disabled. *Wren*, 925 F.2d at 125.

The ALJ next determines, at step three, if the claimant's severe impairments "meet[] or equal[] a listed impairment in appendix 1." 20 C.F.R. § 404.1520(d) (2017); *see* 20 C.F.R. Part 404, Subpart P, Appendix 1 (2017) (Listing). If all the

criteria of a Listing are met, the claimant is considered disabled. 20 C.F.R. § 404.1520(d) (2017).

Before reaching the final two steps, the ALJ must assess the claimant's residual functional capacity (RFC) "based on all the relevant medical and other evidence." 20 C.F.R. § 404.1520(e) (2017). An RFC assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005) (quoting 20 C.F.R. § 404.1545(a)(1)).

At step four, the RFC is used to determine whether the claimant can perform past relevant work. *Perez*, 415 F.3d at 462. If the claimant can perform past work, the claimant is not disabled. 20 C.F.R. § 404.1520(f) (2017). If not, the ALJ proceeds to step five. 20 C.F.R. § 404.1520(g)(1) (2017).

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Perez*, 415 F.3d at 462. If the claimant can perform other work available in the national economy, the claimant is not disabled. *Id.* at 461.

### B. Substantial Evidence Standard of Review

This court's "review of the ALJ's disability determination is 'highly deferential': [it] ask[s] only whether substantial evidence supports the decision and whether the correct legal standards were employed." *Garcia v. Berryhill*, 880 F.3d

700, 704 (5th Cir. 2018). "A decision is supported by substantial evidence if credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* The reviewing court must examine the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992).

### 3. Hearing

At the hearing on September 20, 2017, the ALJ heard testimony from Scott and a vocational expert (VE). (Tr. 384–99, 401–11, 417–29.) Scott testified about her work-history, her daily activities, and her medical problems. (Tr. 387–99, 401–11, 417–23.) She testified that she could not walk far because she would "get out of brea[th]" and that she felt out of breath standing up in the bath. (Tr. 417, 421–22.) She also testified that she had no problems sitting and that she could wash dishes, do laundry, shop for groceries, and clean her room. (Tr. 417–18.)

The VE testified that Scott's prior jobs included "medium" work as a hospital cleaner and "light" work as both a retail sales clerk and a cashier. (Tr. 425–26.) He testified that a person limited to "light" work with restrictions on physical abilities like running and bending could not work as a hospital cleaner but could work as a cashier or a retail sales clerk. (Tr. 426–27.)

5

The ALJ issued his decision on December 28, 2017, finding that Scott was not disabled. (Tr. 377.)

### 4. Analysis of the ALJ's Determination

#### A. Step One

At step one, the ALJ correctly found that Scott had not engaged in substantial gainful activity since the alleged disability onset date of June 20, 2014. (Tr. 371.)

#### B. Step Two

At step two, the ALJ determined Scott's obesity to be her only severe impairment. (Tr. 372.) The ALJ defined an impairment to be "severe" if the evidence established "slight abnormalities that would have more than a minimal effect on [her] ability to work." *Id.* (citing Social Security Ruling (SSR) 85-28, 1985 WL 56856 (S.S.A. 1985)). Under that legal standard, the ALJ found the following to be non-severe impairments: heart disorder, headaches, hypertension, left carotid artery aneurysm, and chronic obstructive pulmonary disease. (Tr. 372–73.)

Scott argues that the ALJ applied the wrong legal standard and that substantial evidence does not support his finding. The court considers each argument in turn.

#### i.   The Proper Legal Standard

Scott argues that the ALJ's "minimal effect" test misstates the proper legal standard for finding an impairment not severe. She argues that this is a legal error that requires remand.

6

NAV

Under Fifth Circuit precedent, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. *Stone* also requires the court to presume that the ALJ applied the wrong standard at step two unless the ALJ cites to *Stone* or includes "an express statement that the construction [the Fifth Circuit] give[s] to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106. The standard articulated by many ALJs,[1] including the one in this case, is based on language from SSR 85-28 and states "[a]n impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." (Tr. 370.)

Scott's argument is that the above-cited wording of the severity standard as articulated in *Stone* is different from the cited text taken from SSR 85-28. The court understands Scott to be saying that application of the *Stone* standard would permit a finding that an impairment is not severe only if the impairment is expected not to interfere at all with the claimant's ability to work, but that the SSR 85-28 standard

---

[1] *See, e.g.*, *Saenz v. Berryhill*, No. 1:18-CV-156, 2019 WL 4061551 (S.D. Tex. July 15, 2019), *adopted sub nom. by Saenz v. Saul*, No. 1:18-CV-00156, 2019 WL 4055001 (S.D. Tex. Aug. 28, 2019); *Stahl v. Berryhill*, No. 1:16-CV-0173-BL, 2018 WL 1444396, at *6 (N.D. Tex. Mar. 2, 2018), *adopted by* No. 1:16-CV-173-C, 2018 WL 1418187 (N.D. Tex. Mar. 21, 2018).

would permit a finding of not severe even if the impairment could have a minimal effect on the claimant's ability to work. Scott argues that these are not the same severity standard. Taking the two quoted passages in isolation, the court can see Scott's point. But the court does not agree that the standard set forth in SSR 85-28 is different from the standard required by *Stone*. Nor does the court agree that the ALJ applied the wrong standard.

One must read both *Stone* and SSR 85-28 in their entirety and together to see why they are in harmony. Both are generally concerned with the circumstances under which an ALJ may terminate the five-step inquiry at step two based on medical evidence alone, irrespective of the claimant's age, education, or work experience. In *Stone*, the Fifth Circuit found that the Commissioner had been applying a standard at step two that conflicted with the statutory and regulatory framework. The Fifth Circuit looked to the legislative history and court precedent and explained, "[t]he prevailing idea, then, among the courts and Congress, is that some impairments are so slight that the ability of the claimant to work can be decided without a full evaluation of vocational factors." *Stone*, 752 F.2d at 1102–03 (citing legislative history which noted that a claimant may be considered not disabled based on a finding that the medical severity of an impairment may be slight enough to presume that their ability to perform substantial gainful activity is not seriously affected). The

Court concluded that the standard adopted by the Fifth Circuit in *Estran v. Heckler*, 745 F.2d 340 (5th Cir. 1984), was correct and must be applied in the future.

SSR 85-28 was issued after *Stone* was decided "to clarify that [the commissioner's] policy is consistent with various court decisions," including *Stone*. SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985). As was the case with *Stone*, the ruling is concerned with providing guidance on the circumstances under which the analysis should terminate at step two. It states "[a]s the [Third Circuit] suggested, the severity regulation is to do no 'more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.'" *Id.* at *2 (citing *Baeder v. Heckler*, 768 F.2d 547 (3d Cir. 1985)). The ruling goes on to give detailed guidance for adjudicators to make that determination.

It must be understood that the ruling is administrative guidance. It explains the standard in several ways, using examples and lengthy explanations. For example, at one point it states "[i]nherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in [substantial gainful activity] is not seriously affected." SSR 85-28, 1985 WL 56856, at *4 (S.S.A. 1985). At another point the ruling states "even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in

9

[substantial gainful activity]." *Id.* at *3. The ruling goes on to say that "[g]reat care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment … the sequential evaluation process should not end [at step two]." *Id.* at *4.

In the court's view, there are some statements in SSR 85-28 that, taken in isolation, arguably conflict with *Stone*. But the overall guidance of the ruling is consistent with *Stone*. Both *Stone* and SSR 85-28 clarify the ALJ's step-two inquiry: to determine whether the medical evidence shows clearly that the claimant's impairments do not prevent them from working. If it does, the analysis should be terminated at step two without regard to specific vocational factors applicable to the claimant. If it does not, the analysis must continue past step two.

Because the ALJ cited SSR 85-28 as the source for the legal standard he applied, and because the standard set out by SSR 85-28 is the same as the standard set out in *Stone*, the court will not presume that he applied an improper standard. Other courts would agree with this conclusion. *See, e.g.*, *Acosta v. Astrue*, 865 F. Supp. 2d 767, 783 n.21 (W.D. Tex. 2012) ("[T]he ALJ's citation to SSR 85–28 can be said to incorporate by reference that ruling's reference to *Estran* and *Stone*, thus conceivably satisfying *Stone's* directive for a reference to that opinion or another of the same effect."); *Britton v. Colvin*, No. CIV.A. 4:13-1477, 2014 WL 2002252, at *6 (S.D. Tex. May 15, 2014) (opining that the ALJ used the *Stone* standard when

10

defining "severe" as having "more than a minimal effect on [the claimant's] ability to perform work-related activities"); *Justice v. Astrue*, No. CIV.A. H-09-188, 2010 WL 883734, at *8 (S.D. Tex. Mar. 11, 2010) (same).

The court also notes that the analysis in this case did not terminate at step two. As discussed below, the ALJ continued the analysis through step four and considered the vocational factors specifically applicable to Scott. Thus, heightened concerns about the precise formulation of the standard identified in *Stone* are not entirely applicable here.

### ii.  Substantial Evidence Supports the ALJ's Step-Two Findings

The court's review of the record shows that substantial evidence supports the ALJ's findings that Scott's alleged heart disorder, hypertension, left carotid artery aneurysm, headaches, and chronic obstructive pulmonary disease do not interfere with her ability to work and are therefore not severe.

The ALJ found no evidence of any heart impairment. (Tr. 372.) He relied on clinical tests that showed Scott's heart functions were "normal" and "stable." (Tr. 372, 749, 798, 800, 955, 991.) At the hearing, Scott testified that she did not have an ongoing heart problem. (Tr. 398.)

The ALJ found no evidence that Scott's hypertension limited her ability to work. (Tr. 372.) He noted that medical records showed Scott had "benign hypertension that was controlled with medication." (Tr. 372, 834, 992.) Scott's

doctors continued to monitor her blood pressure, which remained stable. (Tr. 372, 850, 990, 992, 1179, 1183.) Scott testified that she had never taken medication for high blood pressure. (Tr. 395.)

Scott's left carotid artery aneurysm is also not severe. The ALJ noted that Scott's neurologist and neuroradiologist both monitored Scott's aneurysms and found that they "posed a low risk of rupturing." (Tr. 373, 1075, 1230, 1237, 1236, 1239.) Further, Scott was scheduled to have the aneurysms removed the week after the hearing. (Tr. 373, 395, 1236, 1239.) Thus, Scott's aneurysms were not expected to last and the ALJ did not consider them to be disabling. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii) (2017). Scott points out that the ALJ stated at the hearing that he would find Scott's aneurysms to be severe. (Tr. 404.) She argues that her counsel relied on the ALJ's statement and did not develop the issue further at the hearing. The court agrees the ALJ's hearing statement is somewhat confusing, given that he ultimately found to the contrary. The question for the court is whether substantial evidence supports the ALJ's ultimate decision. It does. Moreover, Scott does not say what else she could or would have done at the hearing had the ALJ not made the preliminary finding.

The ALJ considered Scott's subjective headache complaints but found no clinical evidence to support them. Medical reports showed intermittent complaints of headaches but Scott's neurological examinations showed "normal" results.

(Tr. 1186, 1190, 1228–30.) Scott testified that she had headaches every day but that they only lasted "for minutes." (Tr. 396.) Scott had been able to work for years despite her headaches. (Tr. 372, 395.) Scott also testified that she had not taken medication to treat her headaches since 2008. (Tr. 372–373, 395–96, 1179.) Because her headaches do not interfere at all with her ability to work, they are not a severe impairment.

The ALJ found that Scott's chronic obstructive pulmonary disease was controlled and non-severe. (Tr. 373.) He noted that medical testing showed "normal" lung capacity, lung volume, and residual volume. (Tr. 373, 1123, 1125.) In February of 2017, Scott's treating pulmonologist noted that Scott had discontinued oxygen treatment. (Tr. 373, 1127.) He also reported that Scott was not short of breath during two treatment visits. *Id.* Substantial evidence supports the ALJ's finding. The court also notes that in his step-two analysis of pulmonary disease, the ALJ explained that he assigned Scott "environmental limitations in her [RFC] as a precaution," even though medical evidence did not support finding the impairment to be severe. (Tr. 373.)

The ALJ found no evidence of deep vein thrombosis (DVT). (Tr. 373–74.) Scott had complained of DVT, but medical reports and tests showed no evidence of it. (Tr. 374, 842, 975–76, 990.) At the hearing, Scott's counsel agreed that DVT was

"not a continuing and ongoing condition." (Tr. 401.) Substantial evidence supports the ALJ's finding.

Scott argues that the ALJ should have found her depression to be a severe impairment. The only document that could support Scott's argument is a medical opinion from her primary physician wherein he opined in a one-word answer to a form question that depression may contribute to the severity of Scott's other impairments. (Tr. 1138.) That opinion is not accompanied by any objective medical evidence of depression and therefore is not evidence of an impairment. Medically determinable impairments "must be established by objective medical evidence from an acceptable medical source. … We will not use … a medical opinion to establish the existence of an impairment." 20 C.F.R. § 404.1521 (2017). There is no medical evidence that Scott suffered from depression. In fact, several medical records show that Scott often denied feelings associated with depression. (Tr. 1140, 1170, 1174, 1178, 1182, 1186, 1190.) At the hearing, Scott denied that she had ever been treated for depression. (Tr. 404.)

The court's independent review of the record shows that substantial evidence supports the ALJ's findings at step two. Moreover, other than her disagreement with the ALJ, Scott does not point out how a different finding at step two would have altered the ALJ's ultimate analysis of her RFC or her ability to engage in substantial gainful activity. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (affirming

refusal to remand where correction of ALJ's error would not have changed the outcome, and highlighting that "[t]he major policy underlying the harmless error rule is to preserve judgments and avoid wast[ing] time").

### C. Step Three

At step three, the ALJ found that Scott's impairments or combination of impairments did not meet or medically equal the severity of an impairment defined in the Listing. (Tr. 374.) The ALJ noted that there is no Listing for obesity. *Id.* He found that no combination of Scott's impairments met a Listing at step three. *Id.* Scott does not argue that her impairments met a step-three Listing. The court's review of the record shows that substantial evidence supports the ALJ's findings.

### D. RFC

Before turning to the final two steps of the analysis, the ALJ determined that Scott had the following RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), she can lift and carry 20 pounds occasionally and ten pounds frequently. She can sit, stand and walk six of 8 hours each for a full 8 hour day. She has unlimited push/pull and gross/fine dexterity. She can occasionally climb stairs, bend, stoop, crouch, crawl, balance, twist, and squat. The claimant cannot climb ladders, ropes, or scaffolds and cannot run. The claimant should have no exposure to dust, fumes, gasses, chemicals, and dangerous and moving machinery. There is no mental impairment.

(Tr. 374.) As discussed above, the objective medical evidence shows that Scott's only severe impairment was obesity. She has no mental limitations. The ALJ

determined that Scott's weight limited her to only the "light" exertional level. (Tr. 375.) He also limited her exposure to toxins based on her complaints about shortness of breath. (Tr. 373.)

The RFC is consistent with the State Agency physicians' opinions, which considered Scott's impairments "non-severe" and opined that they did "not significantly limit [her] physical or mental ability to do basic work activities." (Tr. 438, 455.) The ALJ agreed and gave great weight to these opinions. (Tr. 376.) The ALJ's RFC determination is further supported by Scott's own admission that she can perform activities of daily living without assistance. She can do laundry, clean her room, wash dishes, shop for groceries, use a computer, and swim. (Tr. 418–19, 421.) There is no objective medical evidence warranting further limitations to Scott's RFC.

Scott testified that she could only stand for ten to fifteen minutes and could only lift ten pounds. (Tr. 375, 417.) She testified that she could walk shorter distances but that she used a scooter during activities like shopping because otherwise she got "out of breath and dizzy." *Id.* The ALJ determined that the intensity of these symptoms was not consistent with other evidence, such as Scott's testimony that she did not need help to wash dishes, do laundry, or clean her room. (Tr. 375, 418.) The ALJ thus incorporated some of Scott's complaints and limited her to six hours of sitting, standing, and walking.

The only other evidence relevant to Scott's exertional abilities includes two opinions from Dr. Abdul Alhassan and one from Dr. Jose Cantu. (Tr. 375–76, 836–40, 1134–38.) In Dr. Alhassan's first opinion, he noted that Scott could not lift or carry objects weighing more than five pounds. (Tr. 840.) In his second opinion dated just five months later, Dr. Alhassan opined that Scott could lift up to twenty pounds and carry up to ten. (Tr. 1136.) Dr. Cantu opined that Scott could occasionally lift up to ten pounds and could sit for only two hours and stand or walk for less than one hour during an eight-hour workday. (Tr. 1248–49.) Neither physician explained the basis for their opinions. The ALJ gave little weight to their opinions because they were inconsistent with and unsupported by the objective medical evidence. (Tr. 375–76.)

Scott argues that the ALJ did not properly explain his analysis and did not accommodate for her complaints of symptoms. To support her assertion, she cites parts of her testimony and the medical opinions that she thinks the ALJ should have incorporated into the RFC determination. Although Scott disagrees with the ALJ's determination, it is supported by substantial evidence. The ALJ did not err simply because his assessment of the evidence differed from Scott's. *See Vaught v. Astrue*, 271 F. App'x 452, 456 (5th Cir. 2008) (explaining that if an RFC is supported by substantial evidence, mere disagreement with the determination does not constitute reversible error).

17

The court's independent review of the record shows that substantial evidence supports the ALJ's findings.

### E. Step Four

At step four, the ALJ found that Scott could perform her past relevant work both as a cashier and as a retail sales clerk. (Tr. 376.) The ALJ relied on the VE's testimony and compared Scott's RFC with the physical and mental demands of the work required of both jobs. (Tr. 376, 426–27.) The ALJ gave great weight to the VE's testimony. (Tr. 376.)

The court's review of the record confirms that substantial evidence supports the ALJ's step-four findings. Because the ALJ found that Scott was not disabled at step four, his analysis stopped there and did not reach step five. *See Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) ("A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.").

### 5. Conclusion

The court's review of the administrative record reveals that substantial evidence supports the ALJ's finding at each of the sequential steps. The ALJ's decision to deny social security benefits is supported by substantial evidence and is consistent with the law. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court

recommends that Defendant's cross-motion for summary judgment be **GRANTED**, and Plaintiff's motion for summary judgment be **DENIED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on July 30, 2020.

_____
Peter Bray
United States Magistrate Judge